IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VICKIE STROZIER, *o/b/o* C.S. | ) ) ) | CASE NO. 1:11-CV-2535 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | MAGISTRATE JUDGE KENNETH S. McHARGH |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | MEMORANDUM OPINION & ORDER |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 17). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Vickie Strozier's ("Plaintiff" or "Strozier") application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, on behalf of C.S., is supported by substantial evidence and therefore, conclusive.

For the reasons set forth below, the undersigned AFFIRMS the decision of the Commissioner.

## I. INTRODUCTION & PROCEDURAL HISTORY

On February 25, 2009, Plaintiff applied for Supplemental Security Income benefits on behalf of C.S. (Tr. 106). Plaintiff alleged C.S. became disabled on April 1, 2004, due to suffering from attention deficit hyperactivity disorder ("ADHD") and asthma. (Tr. 170). The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. 58-59, 60-62, 67-69). Thereafter, Strozier requested and was granted a hearing before an administrative law judge to contest the denial of her application for benefits. *See* (Tr. 75-79).

On November 30, 2010, Administrative Law Judge Jerry Faust (the "ALJ") convened a hearing via video to evaluate Plaintiff's application for benefits. (Tr. 25-57). The ALJ presided over the hearing from St. Louis, Missouri. (Tr. 27). Plaintiff and C.S., along with counsel, appeared in Cleveland, Ohio, and testified before the ALJ. (*Id*.). No expert witnesses were present at the hearing. (Tr. 25-57).

On December 23, 2010, the ALJ issued an unfavorable decision denying Plaintiff's request for benefits. (Tr. 9-21). Subsequently, Strozier sought review of the ALJ's decision from the Appeals Council. (Tr. 4-5). However, the council denied Plaintiff's request, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 1383(c)(3).

## II. EVIDENCE

### A. Personal and Educational

C.S. was born on March 26, 1995. (Tr. 58). Strozier was awarded legal custody of the child at birth. (Tr. 400). C.S. has a long history of behavioral and academic problems. At the time of hearing he was 15 years old and was enrolled in special education classes in the ninth grade. (Tr. 28, 31).

Records show that as of the second reporting period of C.S.'s seventh grade school-year (2008-2009), he had earned F's and D's in all of his academic classes. (Tr. 185). In February 2009, C.S. underwent an initial Evaluation Team Report ("ETR") by the Cleveland Metropolitan School District. (Tr. 130-39). The ETR was being conducted to determine whether C.S. was eligible for special education classes or other related services. (Tr. 132). As part of the evaluation, C.S. was administered the Wechsler Intelligence Scale for Children—Fourth Edition test. (Tr. 137). C.S.'s full scale IQ score was 70, placing him in the borderline range. (*Id*.).

C.S. was also administered the Woodcock-Johnson III Test of Achievement in the areas of broad reading, broad math and basic writing skills. (Tr. 138). C.S. earned a score of 70 in broad reading, 76 in broad math and 75 in basic writing skills, placing him in the second percentile in reading and in the fifth percentile for both math and writing. (*Id*.). Based upon the totality of data reviewed, including evaluations from Strozier and C.S.'s teachers and counselors, it was determined that C.S. qualified for the "Other Health Impaired program." (Tr. 151).

In May 2010, when C.S. was in the eighth grade, Strozier met with C.S.'s teachers, counselors and other school administrators to discuss C.S.'s Individual Education Program ("IEP"). (Tr. 258-71). The IEP noted that C.S. was enrolled in special education classes for math and reading. (Tr. 260). Tests revealed that C.S's. general reading ability fell within the fourth to fifth grade level, and that he needed to work on his mathematical skills with regard to percentages, decimals and fractions. (Tr. 262).

C.S. also has a lengthy history of behavioral problems both in and out of school. In 2009, C.S. received a number of discipline referrals in school for delinquent behavior including swearing, being disrespectful to teachers, causing disruptions in class and exhibiting threatening behavior. (Tr. 286-91). In 2010, the child was suspended from school on numerous occasions due to fighting and other derelict behavior. (Tr. 280-85). During the hearing before the ALJ, Strozier testified that Plaintiff had recently received another suspension from school due to fighting and that she had recently taken C.S. to juvenile court in order to press charges against him for being unruly. (Tr. 39-43). She explained that the juvenile court assigned C.S. a probation officer and ordered him to perform community service. (Tr. 43-44).

B. Medical

In January 2009, C.S.'s outpatient therapist, Ms. Elizabeth Feroe, drafted a letter describing her treatment of C.S. (Tr. 144). Ms. Feroe indicated that she had treated C.S. since 2003 and diagnosed him with ADHD and oppositional defiant disorder. (*Id*.). She also acknowledged that while C.S. had made progress in therapy in the past, more recently, he "seem[ed] to have plateaued in terms of his progress." (*Id*.). Accordingly, Ms. Feroe discussed beginning discharge from therapy with C.S. and Strozier. (*Id*.). Ms. Feroe encouraged Strozier to seek support from community agencies and the juvenile court system to help C.S. understand the "real consequences" of his unruly behavior. (*Id*.).

On May 4, 2009, C.S. underwent a psychiatric evaluation at the Murtis H. Taylor Multi-Service Center. (Tr. 398-402). C.S. appeared sad throughout the examination, but exhibited good insight and fair judgment. (Tr. 401). Ultimately, C.S. was diagnosed with ADHD and major depressive disorder. (*Id*.). The doctor ruled out oppositional defiant disorder. (*Id*.). The exam also revealed that C.S. tested positive for cocaine at birth. (Tr. 399).

On May 26, 2009, state agency consultant, Dr. Silvia Vasquez, evaluated C.S.'s impairments for purposes of determining disability. (Tr. 360-65). Dr. Vasquez noted the child suffered from ADHD and asthma. (Tr. 360). Ultimately, she concluded C.S. did not meet, medically equal or functionally equal any listing. (*Id*.). With regard to functional equivalence,[1] Dr. Vasquez opined C.S. did not possess any restrictions in the areas of moving about and manipulating objects or caring for himself. (Tr. 363). However, she concluded he suffered from a "less than marked" limitation in the domains of acquiring and using information, attending and

---

[1] The six domains examined to determine functional equivalence are discussed in Section III.

4

completing tasks, and health and physical well-being, and a marked limitation in the domain of interacting and relating with others  (Tr. 362-63).

State agency consultant, Dr. Malika Haque, assessed C.S.'s impairments on October 9, 2009.  (Tr. 389-94).  Dr. Haque likewise opined that C.S. did not meet, medically equal or functionally equal any listing. (Tr. 389).  In terms of functional equivalence, Dr. Haque opined C.S. did not suffer any limitation in the domain of moving about and manipulating objects.  (Tr. 392).  Nevertheless, she concluded the child experienced a "less than marked" limitation in the areas of acquiring and using information, attending and completing tasks, caring for himself, and health and physical well-being.  (Tr. 391-92).  She also agreed with Dr. Vasquez that C.S. suffered from a marked limitation in the domain of interacting and relating with others.  (Tr. 391).

### III.  STANDARD FOR CHILDHOOD SSI CASES

A child under age eighteen will be considered disabled if he/she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i).  Childhood disability claims involve a three-step process evaluating whether the child claimant is disabled.  20 C.F.R. § 416.924.  First, the ALJ must determine whether the child claimant is working.  If not, at step two the ALJ must decide whether the child claimant has a severe mental or physical impairment  Third, the ALJ must consider whether the claimant's impairment(s) meet or equal a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1.  An impairment can equal the listings medically or functionally.  20 C.F.R. § 416.924.

A child claimant medically equals a listing when the child's impairment is "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  Yet,

5

in order to medically equal a listing, the child's impairment(s) must meet all of the specified medical criteria.  "An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).

A child claimant will also be deemed disabled when he or she functionally equals the listings.  The regulations provide six domains that an ALJ must consider when determining whether a child functionally equals the listings.  These domains include:

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and,

(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1).  In order to establish functional equivalency to the listings, the claimant must exhibit an extreme limitation in at least one domain, or a marked impairment in two domains.  20 C.F.R. § 416.926a(d).

> The regulations define "marked" and "extreme" impairments:
>
> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i).

> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities...[it] also means a limitation that is "more than marked."  "Extreme" limitation is the rating we give to the worst limitations.

6

> However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(3)(i).

During the evaluation of a child disability claim, the ALJ must consider the medical opinion evidence in the record. 20 C.F.R. § 416.927. A treating physician's opinions should be given controlling weight when they are well-supported by objective evidence and are not inconsistent with other evidence in the record. 20 C.F.R. § 416.927(c)(2). When the treating physician's opinions are not given controlling weight, the ALJ must articulate good reasons for the weight actually assigned to such opinions. *Id*. The ALJ must also account for the opinions of the non-examining sources, such as state agency medical consultants, and other medical opinions in the record. 20 C.F.R. § 416.927(e)(2)(i-ii). Additionally, the regulations require the ALJ to consider certain other evidence in the record, such as information from the child's teachers, 20 C.F.R. § 416.926a(a), and how well the child performs daily activities in comparison to other children the same age. 20 C.F.R. § 416.926a(b)(3)(i-ii).

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence and whether, in making that decision, the Commissioner employed the proper legal standards. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "Substantial evidence" has been defined by the Sixth Circuit as more than a scintilla of evidence, but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if a reasonable mind could accept the record evidence as adequate support

7

for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* While the Court has discretion to consider the entire record, this Court does not determine whether issues of fact in dispute would be decided differently, or if substantial evidence also supports the opposite conclusion. The Commissioner's decision, if supported by substantial evidence, must stand. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff challenges the ALJ's decision on two related grounds. First, Strozier contends the ALJ erred by failing to rule that C.S. met Listing 112.05(D) for mental retardation. Alternatively, Plaintiff submits that the ALJ erred by failing to find that C.S.'s impairments functionally equaled listing level. Unfortunately for Plaintiff, neither of these objections warrant remand or reversal as substantial evidence supports the ALJ's ruling.

### A. Listing 112.05(D)

A claimant will be deemed disabled if his impairments meet one of the Listings of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). Strozier argues that the ALJ wrongly concluded that C.S. did not meet Listing 112.05(D) for mental retardation.

>Listing 112.05 provides the following:
>
>Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
>The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
>
>. . .
>
>D.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;

20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.05.  Therefore, in order to meet the requirements of the listing, the child's impairments must satisfy both the criteria set forth in the introductory paragraph and one of the six subsets set forth in paragraphs A through F.  *Tate v. Comm'r of Soc. Sec.*, 368 F. Supp.2d 661, 671 (E.D.Mich. 2005).

Here, the ALJ found that C.S. did not meet or medically equal Listing 112.05 because C.S. "[wa]s not mentally retarded."  (Tr. 12).  Presumably, the ALJ concluded this omission precluded C.S. from fulfilling the criteria laid out in the introductory paragraph.  Nevertheless, Plaintiff contends C.S.'s impairments satisfied the requirements of the introductory paragraph.  Strozier points to evidence which she maintains demonstrates that C.S. experienced "deficits in adaptive functioning" as required by the introductory paragraph.  For example, Strozier notes that C.S. did not meet the academic, social or interpersonal standards expected for children his age, required reminders to perform self-care tasks, and was repeatedly subject to discipline at school.

However, these types of problems are not always indicative of deficits in adaptive functioning.  *See Johnson v. Comm'r of Soc. Sec.*, No. 1:09-cv-967, 2011 WL 4954049, at *6

9

(W.D.Mich. Sept. 22, 2011). The court in *Johnson* held that the claimant failed to satisfy the introductory criteria because despite the claimant's poor academic performance, he was able to read, write, complete school assignments, perform household chores and care for his personal needs without excessive dependence. *Id*. Thus, the court found that "[a] claimant capable of performing such activities does not suffer from adaptive deficits." *Id*. (citing *Harris v. Comm'r of Soc. Sec.*, 330 F. App'x 813, 815 (11th Cir. 2009) (finding *inter alia* that the claimant did not meet the requirements of Listing 12.05 because he was "never diagnosed with mental retardation, only borderline intellectual functioning").

Nevertheless, even if the evidence cited by Strozier were sufficient to demonstrate that C.S.'s impairments satisfied the prerequisite criteria, the ALJ's decision would still be entitled to affirmation. The Court notes that an ALJ's ruling must stand so long as it is supported by substantial evidence, though substantial evidence might also support a different conclusion. *Mullen, supra,* 800 F.2d at 545 (quoting *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984)). Here, the ALJ's ruling that C.S. did not meet Listing 112.05 is supported by the opinions of the two state agency consultants who reviewed the child's medical record. Both consultants opined that C.S. did not meet or medically equal any listing. The governing regulations recognize these consultants as "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. § 416.927(e)(2)(i). Thus, their medical opinions are sufficient to carry the ALJ's ruling.

### B. Functional Equivalence

Next, Plaintiff submits the ALJ erred by finding that C.S. did not functionally equal a listing because there is evidence supporting the opposite conclusion. Unfortunately, Plaintiff's argument here suffers from the same flaw discussed above. The relevant question is not whether there is evidence to support a ruling different than that reached by the ALJ. Instead, the

undersigned must determine whether the substantial evidence in the record supports the ALJ's decision.  *Mullen,* 800 F.2d at 545.  If such support exists, the undersigned must affirm the ALJ's determination, even if the undersigned may have decided the issue differently.  This is because the Social Security regulations recognize that there will generally be a "zone of choice within which the decisionmaker[] can go either way, without interference by the courts." *Id.* (quoting *Baker,* 730 F.2d at 1150).

In order for a child's impairments to functionally equal a listing, the child must suffer from marked limitations in at least two domains of functioning or an extreme limitation in one or more domains.  In this case, the ALJ ruled C.S. displayed marked restrictions in the area of interacting and relating with others, but declined to find the child suffered from any marked or extreme problems in any other domain.  The ALJ's finding is entirely consistent with the opinions of the state agency consultants.  Both doctors concluded that C.S. suffered from no more than a marked limitation in one domain – interacting and relating with others.

Plaintiff contends that C.S. also struggled with a marked limitation in the area of acquiring and using information, as evidenced by his poor academic performance, rather than a less than marked limitation as found by the ALJ.  She takes issue with the ALJ's characterization of C.S.'s IQ as being "average", and notes that the ALJ erroneously concluded that C.S. had never been held back in school.  To be fair, the ALJ's description of C.S.'s IQ score may be misleading.  Both the state agency doctors and the ETR labeled the IQ score as falling within the "borderline" range, signifying something lower than average.  (Tr. 137, 362, 391).  Yet, despite whatever label is attached to C.S.'s IQ score, neither doctor found he had marked or extreme difficulties in this domain.  Thus, the ALJ's characterization or mischaracterization of C.S.'s IQ score had no material impact upon his ruling.

Likewise, the ALJ's error regarding C.S. being held back was harmless. Strozier notes that contrary to the ALJ's finding, C.S. was held back in the first grade. (Tr. 301). However, Strozier failed to explain how this error was anything but *de minimis*. Since Plaintiff alleged C.S. became disabled in 2004, this setback predated C.S.'s alleged onset date by several years, and the child's learning problems from the first grade do not necessarily depict the same types of academic problems he suffered years later. As a result, neither of these objections is sufficient to overcome the evidence in the record supporting the ALJ's finding that C.S.'s impairments did not functionally equal a listing.

## VII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  February 26, 2013.